**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VALENTINA RODRIGUEZ,<br><br>  Plaintiff,<br><br>v.<br><br>OLD DOMINION FREIGHT LINE, INC.,<br>et al.,<br><br>  Defendants. | Case No. 1:24-cv-00061 JLT CDB<br><br>ORDER GRANTING MOTION TO REMAND<br><br>(Doc. 10) |

Old Dominion Freight Line, Inc. removed this action from state court based on the federal diversity jurisdiction statute, 28 U.S.C. § 1332, and the rule against "fraudulent joinder," *Grancare, LLC v. Thrower by and through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). Plaintiff Valentina Rodriguez moves to remand the case to state court. (Doc. 10.) The motion is **GRANTED**. As explained in this order, Old Dominion has not demonstrated the non-diverse defendant, Jeffrey Delport, was fraudulently joined, as he may be liable under Rodriguez's claim under the California Fair Employment and Housing Act (FEHA).

## BACKGROUND

Rodriguez worked at an Old Dominion service center office in Bakersfield, California for about one year in 2021 and 2022. (Doc. 1 at 38.) She was the only Hispanic employee in that office. (*Id.* at 70.) Delport was her supervisor. (*Id.* at 65.) She alleges he managed the office;

1

decided what her pay, hours, and work responsibilities would be; and otherwise handled personnel matters as the office's de facto human resources manager.  (*Id.*)

According to Rodriguez's complaint, the Bakersfield service office became severely and pervasively harassing and discriminatory under Delport's supervision.  *See id.* at 71–72.  In her complaint, she offers a few examples of the types of mistreatment she endured.  For example, "on a multitude of occasions," Rodriguez would walk into the office from outside, hearing laughter, only to be met with silence.  She suspects Delport and others "were making harmful statements" about her.  (*Id.* at 71.)  She was the only person who experienced this type of treatment.  (*Id.*)  Rodriguez also alleges she spoke Spanish with some truck drivers from outside the office because it was more efficient and clearer.  (*Id.*)  When her coworkers heard her do this, they made "disparaging comments" about people who speak Spanish as their native language, such as, "This is America."  (*Id.*)  Rodriguez understood them to be saying that "there was no room for [her] ethnicity to be on display."  (*Id.*)  Finally, Rodriguez alleges Delport once called her into his office after another employee complained about her work, refused to hear her side of the story, and made rude comments about her ethnicity, including that she acts "like she's from the hood" and "like a pit bull" and should stop it.  (*Id.*)  Rodriguez never heard him say this type of thing to any of the non-Hispanic employees.  (Id.)  The experience gave her the impression that Delport believed "people of Hispanic origin are inherently of a lesser, or poorer, stature."  (*Id.* at 71.)

Rodriguez once brought Delport's comments to the attention of a Human Resources representative who was visiting from another office, but to no avail; Delport's behavior and her work environment did not change.  (*Id.*)  Her employment was eventually terminated after she took medical leave.  (*See id.* at 72–73.)

Rodriguez originally filed this lawsuit in California state court.  (*See id.* at 15.)  She alleges Old Dominion and Delport created a hostile work environment in violation of the FEHA.  (*Id.* at 81–82.)  She also asserts a variety of wage and hour claims under the California Labor Code, and she alleges Old Dominion violated California laws that protect employees who have disabilities and take medical leave.  (*See id.* at 77–81, 83–95.)  But for reasons explained below, it is not necessary to detail these other claims and the allegations behind them.

Old Dominion removed the case to this Court in January 2024 based on its assertions that (1) more than $75,000 was in controversy, (2) Old Dominion is a citizen of Virginia and North Carolina, (3) Rodriguez is a citizen of California, and (4) Delport's citizenship is irrelevant because he was "fraudulently joined" as a "sham" defendant in an effort to deprive the federal courts of jurisdiction. (*See id.* at 4–12.) The parties appear to agree that Rodriguez and Delport are both California citizens and that Old Dominion is not. (*See id.* at 64–65.) Rodriguez does not dispute Old Dominion's allegation that her lawsuit puts more than $75,000 in controversy. She moves to remand the case based on her argument that her claims against Delport are not a "sham" and thus that the court cannot disregard his citizenship for purposes of the diversity jurisdiction statute. (Doc. 10.) The motion is fully briefed,[1] and the Court took it under submission without hearing oral arguments. (*See* Docs. 11–13.)

**STANDARD OF DECISION**

A defendant can remove a case to federal court if the federal court would have had original jurisdiction. 28 U.S.C. § 1441(a). The federal diversity jurisdiction statute gives federal district courts original jurisdiction over cases in which the amount in controversy is greater than $75,000 and the citizenship of each plaintiff differs from the citizenship of each defendant, i.e., when there is "complete diversity." *Grancare*, 889 F.3d at 548 (citing 28 U.S.C. § 1332(a)(1)). "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Id.* A defendant may rely on evidence from outside the complaint to establish fraudulent joinder, but "in many cases, the complaint will be the most helpful guide in determining whether a defendant has been fraudulently joined." *Id.* at 549.

One way a removing defendant can show that a non-diverse defendant has been fraudulently joined is by proving that person "cannot be liable on any theory." *Id.* (quoting *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)). But this is a "'heavy burden,' since there is a 'general presumption against finding fraudulent joinder.'" *Id.* (alteration omitted)

---

[1] The Court denies Defendants' request to strike Rodriguez's reply even though it was filed four days after the applicable deadline. (*See* Doc. 14.) Defendants have suffered no prejudice due to her late filing.

(quoting *Hunter*, 582 F.3d at 1044). "[I]if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).

The fraudulent joinder standard "shares some similarities" with the standard that governs motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Id.* at 549. But these tests "are not equivalent." *Id.* "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* at 549. Arguments that "go to the sufficiency of the complaint, rather than to the possible viability of the [plaintiffs'] claims" against the non-diverse defendant "do not establish fraudulent joinder." *Id.* at 552. For example, if a plaintiff could potentially amend her complaint to assert a viable claim against the non-diverse defendant, then that defendant was not fraudulently joined. *Id.* at 550. Similarly, if a defendant's fraudulent joinder argument relies on "a defense that requires a searching inquiry into the merits of the plaintiff's case," then that defense is not a "permissible ground for finding fraudulent joinder," "even if that defense, if successful, would prove fatal." *Id.* at 548–49.

**DISCUSSION**

The question here is whether it is possible that Delport could be liable on one or more of Rodriguez's claims. To prove a hostile work environment claim at trial, Rodriguez would need to show (1) she was in a protected class, (2) she was "subject to unwelcome harassment," (3) the harassment was based on her membership in the protected class, (4) the harassment "unreasonably interfered" with her work performance "by creating an intimidating, hostile, or offensive work environment," and (5) Delport is liable. *Martin v. Bd. Trustees of Cal. State Univ.*, 97 Cal. App. 5th 149, 170 (2023). The fourth element requires proof that Delport's actions "interfered with a reasonable employees work performance and would have seriously affected the psychological well-being of a reasonable employee." *Id.* (quoting *Aguilar v. Avis Rena A Car System, Inc.*, 21 Cal. 4th 121, 130–31 (1999)).

As summarized above, the question is not whether Rodriguez's factual allegations

4

"plausibly give rise to an entitlement to relief" under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). It is whether Old Dominion has demonstrated that Delport "cannot be liable" at all, which it does not demonstrate here. *Grancare*, 889 F.3d at 548 (quoting *Ritchey*, 139 F.3d at 1318). Old Dominion cites no case in which similar allegations constituted a jurisdictional "sham." Its relies instead on arguments about the standards that would apply if it had instead moved to dismiss, for summary judgment, or judgment after trial. (*See* Doc. 11 at 14–15 (citing *Vasquez v. County of Los Angeles*, 349 F.3d 634, 643 (9th Cir. 2003) (affirming summary judgment based on inadequate record evidence); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (reversing judgment after bench trial); *Edwards v. Dep't of State Hosps.-Coalinga*, No. 14-1435, 2015 WL 4730156, at *3–4 (E.D. Cal. Aug. 10, 2015) (granting motion to dismiss under Rule 12(b)(6) based on a lack of factual allegations).)

California federal district courts have rejected similar arguments including in cases of allegedly hostile work environments. In one recent decision, another California federal district court rejected the defendant's fraudulent joinder argument based on the plaintiff's sparse allegations about his employer's response to concerns about deadlines and workloads. *See Xie v. Wal-Mart Assocs., Inc.*, No. 25-00091, 2025 WL 1135082, at *3–4 (N.D. Cal. Apr. 17, 2025). According to the complaint, a supervisor had threatened to terminate him, accused him of taking fraudulent medical leave, and labeled him a security threat. *See id.* at *1. Though the district court expressed skepticism about whether these allegations would prevail at trial, let alone in response to a Rule 12 motion, it remanded the case to state court because it was "at least possible" that a state court could find that the plaintiff had stated a claim, "particularly since California courts apply lenient pleading standards." *Id.* at *3. The potential for a curative amendment was also "obvious." *Id.* at *4. *See also, e.g.*, *Golden v. Microsoft Corp.*, 727 F. Supp. 3d 867, 872–74 (N.D. Cal. 2024) (reasoning similarly in hostile work environment case); *Phillips v. United Parcel Serv., Inc.*, No. 19-02400, 2020 WL 996597, at *3 (C.D. Cal. Feb. 28, 2020) (same).

The circumstances of this case are not meaningfully distinguishable. A state court could find Rodriguez's complaint states a claim against Delport, or she could amend her complaint to address factual weaknesses. To paraphrase the Ninth Circuit's opinion in *Grancare*: Old

5

Dominion's arguments about the severity, pervasiveness, and frequency of the alleged harassment invoke a "defense that requires a searching inquiry into the merits of the plaintiff's case," so it is not a "permissible ground for finding fraudulent joinder." 889 F.3d at 548–49. A single potentially viable claim suffices to justify remand in these circumstances. *Xie*, 2025 WL 1135085, at *4. The court therefore does not reach Old Dominion's arguments about Rodriguez's other claims.

### CONCLUSION

The motion to remand (Doc. 10) is **GRANTED**. The Clerk's Office is directed to **REMAND** this action to the Superior Court of the State of California for the County of Kern and to close the case.

IT IS SO ORDERED.

Dated:   **January 20, 2026**

UNITED STATES DISTRICT JUDGE

6